Next case on the docket is People v. State of Illinois v. LaTosha Cunningham 514-0162 We have Mr. Munches Munches Munches, okay, thank you Mr. Munches Good afternoon, may I please report? Good afternoon At the core of this appeal lies the right to remain silent Advising his right, Ms. Cunningham had unambiguously invoked it But the police failed to honor it Her indication did not cause the detective to pause Instead turned her through to punishing interrogations over the course of a seemingly endless day As seen in the videos, the detective's questions only ended As paramedics transported Ms. Cunningham to the hospital with the police escort This interrogation came on the heels of a May 18, 2011, robbery, kidnapping, and murder Three days later, detectives brought Ms. Cunningham in for interrogation Ostensibly hiding a confession from someone else, inculpating Ms. Cunningham in some extent The first interrogation that day occurred between 3 or 4 a.m. and 5.5 a.m. Four detectives took part The interrogation was initially led by Detective Marcos Pulido It was later led by former Detective Orlando Ward The second interrogation occurred between 6.49 and 10.28 a.m. Both detectives, Pulido and Ward, were present Ms. Cunningham unambiguously invoked her right to remain silent midway through the first interrogation Just after 4 a.m. You used the word unambiguously invoked Yes, Your Honor She just said, I don't want to talk about some murder She never said, I want a lawyer She never said, I want to remain silent Why do you say unambiguously invoked her right to remain silent? Sure, so the quick answer is that's a term of art, of course And then the second answer is the context of the interrogation itself So what was it about that that unambiguously invoked? Sure The first hour of the interrogation, Ms. Cunningham had not and refused to confess Detectives Pulido and Collins, his partner, become very frustrated with her Pulido said to her, I'm giving you one last chance Would you like anything else to say because this is your chance? Ms. Cunningham rebuffed him, she said, no He said, nothing else? Questioning her again, she said, I have nothing to say about no murder Pulido began to overtalk her at that moment and said, OK, got you, got you, OK That moment, Pulido and Collins left the interrogation room And the parties agreed that invocation must be unambiguous And in this instance, saying no, I have nothing to say about no murder is a plain, specific, and express refusal to speak This is nothing like a denial of involvement in some crime This is her saying, I am not going to be speaking anymore It's well established The court's standard of review with respect to the facts are manifest ways Indeed In the opening brief and in the reply brief, we note that former Judge Cook's order is a little cryptic in this regard It was a two-sentence order, and Judge Cook said that in considering the testimony of the officers, the court does find that the best evidence is the video of the interrogations itself So, we flagged in the opening brief and reply brief that that order is far from clear Well, the reason why I did mention that is because he does say that he relied on the video Indeed as the best evidence, and that does go beyond the mere words that she says and puts it into a context and facial expression and her other body movements It does However, this court's in no different position from the circuit court in assessing all those facts If Judge Cook indeed just found that the video was the most credible account of the events itself, then this court sits in the exact same perspective as Judge Cook on that matter Well, not in a de novo way, though We actually find that his viewing and findings are against Amanda's way Yes, we cited a Supreme Court case The court has, in the past, looked at factual issues de novo when the circuit court sits in the exact same place as appellate courts We're by no means insisting that this court need to do that It's just simply an alternative argument So, whether under the manifest weight standard or the de novo standard it's clear that Ms. Cunningham had unambiguously voked her right to remain silent The context of her statement only supports this in particular, her body language Detective Polito had second-guessed her decision not to speak and she denied him eye contact When Detective Polito again second-guessed her decision to be quiet she looked up at him, she cut him off and she said, she asked to leave the interrogation room She was over this interrogation Shortly after that, indeed, Detective Polito and his partner left the interrogation room Now, that's not where this ends, of course Once you invoke your right to remain silent the police must scrupulously honor that That comes from Michigan v. Mosley You see through the video that the police never left her alone and you also see that Ms. Cunningham never reinitiated Now, before I dive into Michigan v. Mosley I just want to point out that we have an implied belief that the state elected not to analyze the facts of this case under Michigan v. Mosley Therefore, under basic rules of appellate procedure the state has waived any argument today about Michigan v. Mosley But with the waiver aside the black-letter rule says Failure to scrupulously honor a request to remain silent renders any subsequent statements inadmissible under Michigan v. Mosley Of course, you consider the six factors that come out of Mosley itself Today, I'd like to focus on five factors that weigh in favor of suppression To begin, the police did not immediately cease interrogation after she invoked First of all, Detective Polito took a hearty shot at her and said, you're going to regret this for a long time Less than two minutes later, former Detective Orlando Ward showed up This was basically the theme you'd see throughout these interrogations Constant police presence Even when Ms. Cunningham was taken to the hospital They never left her alone It was Detective Polito leading the interrogation Then former Detective Ward The paramedics show up They still ask her questions They transfer her to the hospital They put her in police transport How big is she? Ms. Cunningham's height and weight I've not looked at it recently According to the video, I mean, is she in a small room? Are they being overbearing? The record doesn't reveal the dimensions of the room No, but we're looking at the video I haven't looked at the video, so It's two detectives in a small room Ms. Cunningham appears exhausted many times Polito and Collins Detectives Polito and Collins are yelling at her Polito and Collins sort of abruptly leave the room At that point, former Detective Ward comes in as sort of a soothing presence As you'll see in the video Detective Ward has some sort of past relationship with Ms. Cunningham He relies on that heavily You'll see at different times Former Detective Ward even touching Ms. Cunningham's face There's an intimacy, there's no doubt There's an intimacy there And so what you have is sort of repeated police presence You have two versus one You have Ms. Cunningham never out of the watchful eye of the police despite her identification She did ask why she was there, right? When they didn't tell her she was under arrest Correct Was she free to go? She was not free to go Was that ever explored? I didn't see it in the brief Sure, it was not explored in the brief It was taken as granted below and here Ms. Cunningham She was under arrest Yes, she was in custody I think at times prosecution and police draw a distinction between formal arrest and in custody So you would not get any police officer say that I filed an arrest report However, it's clear from the record she was not free to go and therefore, you know, triggering Miranda's protections The state's brief though has more of the transcript in it than you offered where the state they were evidently talking to her about this murder and they tell her you're caught up in a murder investigation and she goes there's no way and the officer says you'll have to go with that then we'll just have to go with that Is that the second interrogation? So, yeah, is there a time stamp on that? It's 4-11-25 So that's right during the invocation That's what I'm talking about What you put in your brief is not the complete context at least I gather between the two briefs They've told her that she's involved in a murder investigation She's responded by saying no She refuses to discuss, she refuses to say But she's not invoking her right to remain silent She's talking to them She's denying, basically She's denying, she's talking to them And then she says no They say no, we'll have to go with that He says we'll have to go with that then And then Detective Polito says I'm giving you one last chance Would you like to say anything else? Because this is your chance And she says no, I don't want to say anything else No, that's not what she says She says no He says this is your last chance And she says no And the Detective Polito says nothing else And so they're conversing And she says I have nothing to say about no murder About no murder Because that's what they're talking about Or it's a denial that she had anything to do with the murder which makes it potentially ambiguous It does not make it potentially ambiguous Every single one of her denials which the State brought up in its brief are categorically different from this This is not her saying I didn't do this This is her saying I refuse to speak about this issue This is a linguistic matter of blame but context also bears this out What's the difference between what you just said and a denial? I refuse to speak about this issue Sure, a denial would say I did not commit this crime A refusal to speak about this issue is I'm not going to speak about this You're not saying I didn't do it You're saying I simply will not speak about this I am done speaking about this But what you haven't said and I think this is important is you haven't said I unambiguously invoke my right to remain silent That's because there's no talismanic requirement All you have to do is say All you can indicate is that you are done speaking You don't have to say I am exercising my right to remain silent It's nothing like that So just by denying By saying I have nothing to say about the murder She's indicating she's done speaking about the issue And consistent with that Detective Felito Collins left the room after that moment All right Okay, you're done then, sir At least for now Okay, Ms. Stacy Thank you What say the people? Your Honor, counsel, may it please the court Kelly Stacy, appearing on behalf of the people The state has laid out in its brief that the defendant waived her right to remain silent and answered questions of the detectives Moran coins were given and the defendant understood her rights and signed a waiver form The issue for this court is whether the trial court properly concluded defendant did not invoke her right to remain silent I think for purposes of review it's important to look at a major U.S. Supreme Court case In 2010, the court heard Berghese v. Tompkins decided that case And in that case it involved a defendant who remained silent through most of a three-hour interrogation before he finally answered an officer's question And that question was whether he believed in God and whether he prayed for forgiveness for shooting a boy down And defendant Tompkins in that case answered yes Tompkins was then charged with first-degree murder and he moved to suppress the incriminating statement The trial court in the Berghese v. Tompkins case denied the motion It went through the appeals process throughout the state courts in Michigan And those courts all affirmed the trial court's denial of the motion to suppress The Sixth Circuit, however, reversed and found that Tompkins, who sat silent for 2 hours and 45 minutes sufficiently invoked his right to silence The U.S. Supreme Court concluded that remaining silent does not invoke the right to remain silent Instead, the court found if a defendant wishes to invoke the right to remain silent he must unambiguously express that desire That's where the unambiguous language comes in The parties in this case agree that the test turns on how a reasonable police officer would perceive the suspect's words In this case, the trial court watched the video the interrogation videos and also provided testimony for concluding that the defendant did not invoke the right to remain silent Detective Marcos Polito testified he did not believe defendant's statement I have nothing to say about no murder was an indication of the right to remain silent He testified he believed the statement was a continuation of her denials in the involvement in the murder Back to the Berghese case The Berghese court found Tompkins' answer was a course of conduct indicating waiver of the right to remain silent In that Berghese case, the court relied heavily on a case called Davis v. United States a 1994 case In that case, what was reviewed was how a suspect must invoke the right to cancel And the Davis court declined to hold that police must cease questioning if it is unclear whether a suspect is requesting an attorney The Davis court found that requiring officers to cease questioning if a suspect might be requesting an attorney would put police officers in a really bad, precarious position Officers would be forced to make a difficult decision with the threat of suppression of evidence if they guessed wrong about what the defendant wanted So, in Berghese, the Supreme Court applied the Davis rule and announced the unambiguous invocation requirement so that there is an objective inquiry that, according to the court, avoids difficulties in proof and provides guidance to officers on how to proceed in the face of ambiguity Both parties in this case relied very heavily on the interrogation videos and the briefs And I believe this court It sounds like you have not had an opportunity to view the video, but I think the question for this court in reviewing the videos is  If there is ambiguity in the defendant's statement If there is equivocation here And I believe there was equivocation here We do not get to the Michigan v. Mosley argument that the defendant makes And that is why the state elected not to present an argument on that issue Because it is not the The distinction that the defendant makes in the brief is that it is the right to silence that must be scrupulously honored That is not correct What must be scrupulously honored is the invocation of the right to remain silent If an invocation is never made there is nothing scrupulously honored Courts favor questioning, interrogations and confessions It is just the way the legal system works So absent an unambiguous invocation the officers properly kept answering questions Detective Ward testified that it is very common in most of the interrogations that they switch officers One will leave And I think the video does show that Detective Pulido and the other detective with him They were wrapping up things and getting ready to leave the room when Detective Ward came in And it does appear as though there was a prior relationship between Orlando Ward and the defendant And I think that is borne out by the video If they were done If they were done questioning her then why did Ward come in? Why did this continue then? It appears to me from watching the video It looked like the officer at least one of the officers had somewhere else to go or they were having a natural break And I think the defendant said something about needing to use the bathroom Detective Pulido had answered Well, you've got to get a female in here But if you notice on the video and in the record Detective Pulido was from the Alba Police Department not the Belleville Police Department So he probably did not know the procedures for what happens when a suspect needs to use the bathroom So when Detective Ward came in she said, hey, I'm supposed to get to use the bathroom If the defendant believed it wasn't clear that she wanted to remain silent then I think she could have made another comment that, hey, I don't want any more questioning I don't have anything to say at all I want to remain silent So the people asked that after you view the video if you find an ambiguity that you affirm the decision in the trial court And if there are no further questions I thank your Honor for listening Thank you very much Thank you Mr. Martius Thank you So in the briefing inside numerous cases where similar statements are held to be sufficient indications of the right to remain silent One of them is people be strong where the defendant said I didn't want to say anymore Another is people be great where the defendant said there's nothing to talk about Here in this case Ms. Cunningham told Detective Pulido I have nothing to say about homework She was done talking to him She was over it She was exercising her right to remain silent Pulido and Collins acknowledged that Pulido and Collins left the room Detective Pulido testified at the motion to suppress hearing said I've been in several interviews where I've talked about multiple cases If the suspect says he doesn't want to talk about that one I stop interviewing him about that Pulido's leaving the interrogation room is consistent with his professed interrogation practices At the suppression hearing Pulido essentially put forth the argument to the judge Who are you going to believe? Me or your lying ass? You just watch the video You see how they interact You see Pulido appreciates the significance of her invocation Similarly, Detective Ward testified If he heard someone say I have nothing else to say about this murder he would stop questioning So, it seems like this court is most concerned with whether or not there's an invocation We steadfastly assert she certainly unambiguously invoked her right to remain silent People being mostly Kixon at that moment Why? Because she had invoked her right and the police needed to scrupulously hide What we said earlier was the police were omnipresent They were there in front of her at all moments for hours and hours and hours She never got a break She was at the hospital for how long? It appeared... Well, so, the first interrogation ends around 5.25 a.m. The second begins around 6.49 p.m. So, if they were with her it was not... She was not undergoing any kind of interrogation We don't know that The state never put on any evidence about that issue So, we don't... You're saying that she was interrogated at the hospital or you're just saying... We're saying it's certainly a possibility In the brief, what we say is the state put on no evidence about this gap in time Therefore, the state shouldn't be allowed to rely on an appeal under Michigan v. Mosley analysis where the state had to very initially present evidence about what happened at the hospital who went with her what they say to her did the doctors put her on medication? did the doctors clear her for a subsequent interrogation? We don't get those questions answered But you don't get a presumption either, do you? That's why we say that this factor shouldn't cut in favor of either party And instead, these other five factors do cut in favor of suppression In particular, subsequent interrogation was by Detective Polito and Detective Ford The subsequent interrogation was about the exact same crime And what we saw after an invocation was police immediately asking her to change her mind Now, under the law that knowledge of invocation is imputed to her That's clear from the Supreme Court Because to do otherwise would be to simply subvert anyone's actual invocation What we see is Polito show up or, excuse me What we see is Ward show up and immediately start convincing her to speak He sort of sets out polar opposites Ward himself is in a unique position to help her based on their long-standing relationship On the other hand Her Miranda rights are in a unique position to hurt her Ward tells Ms. Cunningham I'm going to do all I can to keep you from walking out of this room without saying nothing He's telling her the rights remain silent and will only hurt her He is there to help her help her speak and help her tell her side of the story He is lying about the importance and significance of her right to remain silent Similarly, he lies about the significance of the right to counsel He tells her a public defender is not going to let her say anything That's not true We all know that the decision to testify at trial is uniquely the defendant's own Yet Ward is there telling her If you don't talk now you'll be buried He also convinced her that she was going to be processed through a racist and broken criminal justice system What we have is invocation and what we have is immediately undermining that invocation Your Honors Under Michigan v. Mosley you must scrupulously honor your right to remain silent The police must scrupulously honor your right to remain silent once invoked Ms. Cunningham has argued forcefully that five of six factors under Mosley favor suppression If there are no further questions Thank you Thank you very much Okay We appreciate your arguments and that will be taken under advisement in an orderly and due course Thank you both for your afternoon